**Application of Robert K. REMER.**
**Patent Appeal No. 8976.**

United States Court of Customs and Patent Appeals.

Aug. 23, 1973.

Timothy L. Tilton, Chicago, Ill., attorney of record, for appellant; Dawson, Tilton, Fallon & Lungmus, Chicago, Ill., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 59–66, all of the claims remaining in application serial No. 575,266, filed August 26, 1966,[1] entitled "Method of Treating Finely Divided Solid Particles and Products Produced Therewith." We affirm.

### The Invention

Appellant's primary object appears to have been the production of pigments and printing inks made by adhering to very small[2] solid particles, such as those of which clay is composed, dyes or color

1. Stated to be a continuation-in-part of application serial No. 536,564, filed March 14, 1966, entitled "Lignin-Based Colorants and Products Produced Therewith."

2. Appellant's disclosure is of particle sizes in the 20 to 80 millimicron range for carbon black particles and "around 50 microns or below" for clay minerals but the claims are not so limited. A micron is a thousandth of a millimeter and a millimicron is a thousandth of a micron.

intermediates, one purpose being to prevent bleeding of the dyes. Another type of finely divided solid particle employed is carbon black, the coating of which with a dye improves its color in printing ink. Adhesion of the dye or other colorant to the solid particle is brought about by admixing with a cationic surfactant, defined in the application as a material which, when ionized in a solvent, has a hydrophobic lipophilic end on the positively charged cation. While not limited thereto, it is "generally noted" that the cationic surfactants include the organic amines, "for example, long chain aliphatic amines and polyamines, quaternary amine bases and salts, imidazolines, and other organic amines * * * broadly defined as those compounds which when contacted with a finely divided solid such as carbon black or bentonite clay provide said finely divided solid with a substantially improved receptiveness for, and ability to fixedly bond or attach with, other organic and/or inorganic substances." In addition to coloring materials, appellant contemplates attaching to the solid particles such materials as optical brighteners, ultraviolet absorbers, and even antibiotics, antiperspirants, and deodorants.

### The Claims

Claim 59 is illustrative and reads, with paragraphing added by us, as follows:

The method of forming an improved pigment by fixing a suitable colorant to finely divided solid particles, said method comprising the steps of:

dispersing finely divided solid particles selected from the group consisting of clay minerals and oxides, carbonates, sulfates and silicates of aluminum, barium, calcium, magnesium, silicon, titanium and zirconium in a liquid medium in which said solid particles are insoluble, said liquid medium being present in an amount sufficient to enable the formation of a suspen-

sion of said finely divided solid particles in said liquid medium,

mechanically agitating said finely divided solid particles and liquid medium to uniformly distribute and suspend said solid particles in said liquid medium,

adding an effective amount of a cationic surfactant to said suspension, adding an effective amount of a colorant selected from the group consisting of natural dyes, synthetic dyes and color intermediates to said suspension, said effective amounts of said cationic surfactant and colorant respectively being amounts which are sufficient to coat substantially the entire surface area of said finely divided solid particles,

mechanically agitating said suspension to uniformly contact said finely divided solid particles with said cationic surfactant and colorant,

and fixing said cationic surfactant and colorant to said finely divided solid particles.

Claims 60–63 depend from claim 59 and appellant says that their patentability can be resolved by considering only claim 59.

Claim 64 is directed to an improved pigment product comprising particles from the same group as in claim 59, "having affixed thereto a cationic surfactant and a colorant selected from the group consisting of natural dyes and synthetic dyes."

Claim 65 is to a method of bonding an optical brightener or UV light absorber onto a pigment particle, the method steps corresponding to those in claim 59 except that the particles are more broadly claimed as "finely divided pigment particles" and the "fixing" is done "by adjusting the pH."

Claim 66 is directed to a pigment composition comprising finely divided particles coated with a cationic surfactant and an optical brightener or an ultraviolet light absorber.

*The Rejection*

The following two references are relied on:

Ratcliffe      2,622,987   Dec. 23, 1952
Balon et al.   2,755,202   July 17, 1956

According to the examiner, the basic difference between the invention claimed and the disclosure of Balon et al. resides in the sequence of adding the materials. He said:

> For example, Appellant treats the clay with a cationic material and then adds the coloring agent; whereas Balon et al treats the coloring agent with a cationic material and then adds the clay.
>
> The overall result is the same.
>
> However, treating the clay with the cationic material and then the coloring agent is known, as taught by Ratcliffe.
>
> \*      \*      \*      \*      \*      \*
>
> Claims 60 to 64 differ from claim 59 in scope only.
>
> \*      \*      .\* Although not identical to the ones disclosed by Appellant, Balon et al use oxidizing agents or other special agents. Oxidizing agents are known to be optical brighteners (claims 65 and 66).

Accordingly, the examiner rejected all claims as obvious within the meaning of 35 U.S.C. § 103.

In affirming the § 103 rejection, the board stated that "It would be obvious in view of Ratcliffe to disperse finely divided solids in a liquid vehicle, to add a cationic surfactant and thereafter to add a colorant or pigment." The board added that "it would be obvious to employ the same process to coat clay particles with a brightening agent or a UV absorber" since they "are normally considered as adjuvants in the dyeing and printing field"; and that the "addition of metal salts such as aluminum chloride to a dyeing bath as a fixing agent would be obvious to one skilled in this art." Noting that "Balon et al. teach the combination of leuco base dyestuffs with cationic agents, including organic amine

surfactants," the board stated that "It would be obvious to substitute a leuco base dye in the Ratcliffe process with provision for subsequent development of the color using an oxidizing agent and an acidic material as the color producing reagent in the manner taught by Balon et al."

There was also a rejection by the examiner under 35 U.S.C. § 112 on several grounds, affirmed by the board on only one ground, namely, double inclusion of elements in naming the finely divided solid material which the examiner thought rendered the claims vulnerable under § 112, second paragraph, on the ground of indefiniteness.

OPINION

In view of our affirmance on the § 103 rejection we find it unnecessary to consider the § 112 rejection.

As to the § 103 rejection, appellant emphasizes in his brief, as he does throughout his specification, that the essential feature of his invention is the utilization of a cationic surfactant for fixing colorant to solid particles. In spite of excessive loquaciousness in claim 59, that is essentially its subject matter; clay particles are made into a slurry, a cationic surfactant and a colorant are added and stirred, and the colorant adheres to the solid particles because of the action of the surfactant. Unlike appellant's specification, which sets forth in considerable detail, including 23 specific examples, many printing ink and dye formulations to illustrate the adhering of the colorants to the solid particles, claim 59 is directed to the broadest aspect of the process of causing adhesion by use of a surfactant.

Appellant is compelled to admit in his brief that the Ratcliffe reference discloses, in a printing ink or paint composition, in combination, clay treated "with a cationic base, including amines and quaternary ammonium compounds, which would be classed as cationic surfactants." This "modified clay" is admittedly used "in conventional paints

and inks." These, of course, contain colorants. Appellant argues that "the reference does not suggest that the cationic modified clay interacts with any pigment or other colorant that is present in the completed paint or ink." The Patent Office position, on the other hand, is that Ratcliffe specifies that his paint or ink may contain "organic toners and dyes, carbon black, bone black" and that its presence would obviously and inherently result in a coating or bonding of the modified clay with the colorant. Further, the Patent Office contends, relative to claims 65 and 66, that "Just as a dye would be expected to coat surfactant modified clay, so would a brightening agent or a UV absorber be expected to do the same for the modified clay with or without colorant." Appellant's brief concedes that brightening agents and UV absorbers were previously known in this art.

It thus appears clearly to us that the combinations of ingredients comprehended by appellant's product claims are found in the prior art and, assuming the validity of his theories of operation, the surfactants will inherently cause adhesion of the colorants to the "finely divided solid particles" coated therewith and bring about the advantages he claims for his invention. With respect to the method claims (59–63 and 65), we agree with the board that they do not present anything unobvious in their various limitations as to adding, agitating, fixing, and relative amounts. As to the order of adding surfactant, colorant, and solid particles, appellant himself points out in his Examples 16, 19, and 23 that he gets the same results when adding the dye to the slurry before, simultaneously with, or after the addition of the surfactant. As to "fixing," this is claimed, in claims 60 and 65, as done "by adjusting the pH." In the specification it is shown that this is done by adding acid to basic solutions and base to acidic mixtures; it is also shown that in some mixtures nothing whatever has to be done—fixing is automatic. The board thought the manipulations would

be obvious and appellant has not argued this point. As to amount, the claims say using enough solid particles to make a suspension, "effective" amounts of surfactant and colorant, and sufficient colorant to coat substantially the entire surface areas of the particles. We agree that unobviousness cannot be predicated on these limitations. Given the desire to coat the particles it would be obvious to use enough for the purpose.

We have fully considered appellant's arguments but they do not persuade us of error in the rejection of all claims under § 103 on the references and that rejection is therefore affirmed.

Affirmed.